UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABE PARKER, III,<br><br>            Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>            Defendant. | Case No. 1:22-cv-00158-CDB (SS)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 15) |

Plaintiff Abe Parker, III ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the Administrative Record ("AR") and the parties' briefs, which were submitted without oral argument. (Docs. 14, 15, 21).[2] The Court finds and rules as follows.

///

///

---

[1] On January 21, 2025, Michelle King was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency.commissioner/ (last visited January 23, 2025). She therefore is substituted as the Defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] Both parties have consented to the jurisdiction of a magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 13).

I.    **BACKGROUND**

A.    **Administrative Proceedings and ALJ's Decision**

On June 26, 2020, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability commencing on June 15, 2024.  (Doc. 15 at 3); (AR 232-235).  Plaintiff's claim was initially denied on September 30, 2020, and again upon reconsideration on May 4, 2021.  (AR 138-142; 143-149).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on May 12, 2021.  (AR 150).  The ALJ, Robert Milton Erickson, held a hearing on August 26, 2021.  (AR 42-85).  ALJ Erickson issued an unfavorable decision on October 7, 2021.  (AR 21-41).  The Appeals Council denied Plaintiff's request for review on December 20, 2021, thereby effectuating the ALJ's decision as the final decision of the Commissioner.  (AR 1-6); 42 U.S.C. § 405(h).  Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision.  (Doc. 1).

After reviewing the evidence, the ALJ determined that Plaintiff met the insured status requirements of sections 216(i) and 223 of the Social Security Act through September 30, 2024.  (AR 26 ¶ 1).  The ALJ thereafter considered Plaintiff's claims using the five-step sequential evaluation required by C.F.R. § 404.1520(a).  (AR 26).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2020, the alleged onset date.  (*Id.* ¶ 2).  The ALJ further found that Plaintiff worked after the alleged disability onset date, but this work activity did not rise to the level of substantial gainful activity.  (*Id.*).

At step two, the ALJ found that Plaintiff has the following severe impairments: obesity, depressive disorder, and PTSD.  (*Id.* ¶ 3).  The ALJ determined that Plaintiff's diagnosis of presbyopia is non-severe because it does not significantly limit Plaintiff's ability to do basic work activities.  The ALJ also determined that Plaintiff's alleged low back and knee pain and glaucoma are not medically determinable impairments ("MDI"), as the allegations do not meet the durational requirement and lack the requisite objective medical testing to establish a MDI.  (AR 27).  As to back and knee pain, though the consultative orthopedic evaluation described Plaintiff as having chronic lumbosacral musculoligamentous sprain/strain likely associated with degenerative disc disease and chronic pain in the knees bilaterally with infrapatellar tenonitis and probable early

patellofemoral chondromalacia (citing Ex. 6F), the ALJ determined that these records lack the requisite objective medical testing necessary to establish a MDI.  (*Id.*).  Though the records revealed glaucoma was suspected in 2021, the ALJ determined the records lack evidence of definitive testing or diagnosis (citing to Exhs. 5F/33 and 10F/17).  (*Id.*).

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 27-28).  The ALJ discussed the reasoning as to why each impairment failed to meet the requirements of the listings.  The ALJ found no evidence that Plaintiff's obesity affects any body system or mental functioning such that it would medically equal listing severity.  In evaluating the severity of Plaintiff's mental impairments, the ALJ considered the four broad functional areas of mental functioning listed in the "paragraph B" criteria. [3]  The ALJ found that Plaintiff has a moderate limitation as to all four functional areas, and because these mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the "paragraph B" criteria are not satisfied.  (AR 28).

The ALJ further considered the "paragraph C" criteria[4]  and found that the evidence fails to

---

[3] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  (*Id.*).  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  (*Id.*).  An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  (*Id.*).  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  (*Id.*).  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair."  (*Id.*)  And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  (*Id.*); *see Carlos v. Comm'r of Soc. Sec.*, 1:21-cv-00517-SAB, 2023 WL 1868870, at *4 n.7 (E.D. Cal. Feb. 9, 2023).

[4] "Paragraph C," subsection (1) requires a "highly structured setting that is ongoing that diminishes the signs and symptoms of [Plaintiff's] mental disorder."  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.04(C)(1).  "Paragraph C," subsection (2) requires that Plaintiff "have minimal capacity to adapt to changes in [Plaintiff's] environment or to demands that are not already part of [Plaintiff's] daily life."  (*Id.* at subsection (C)(2)).

1   establish the presence of the "paragraph C" criteria because Plaintiff had more than minimal

2   capacity to adapt to changes in his environment or to demands that are not already part of his daily

3   life. (AR 28). The ALJ found that there is insufficient evidence to establish that Plaintiff's mental

4   disorder(s) were "serious and persistent." The ALJ found no evidence in the record establishing

5   that despite Plaintiff's diminished symptoms and signs, he achieved only marginal adjustment, nor

6   did it show that changes or increased demands have led to exacerbation of such symptoms or signs

7   and to deterioration in Plaintiff's functioning. (AR 28).

8       Prior to step four, the ALJ found that Plaintiff has the residual functioning capacity ("RFC")

9   to perform medium work as defined in 20 C.F.R. 404.156(c) except lift or carry occasionally 50

10  pounds, frequently 25, stand or walk 6 hours of an 8-hour workday, with no limitations in sitting.

11  (AR 28). The ALJ found that Plaintiff: can occasionally stoop, crouch, crawl, or kneel with no

12  exposure to extremes of cold or dampness; is capable of carrying out short and simple instructions

13  and maintaining concentration, persistence, and pace for the performance of those instructions; is

14  capable of superficial interaction with supervisors and coworkers within an environment that does

15  not involve interaction with the public; and can respond appropriately to changes in the work

16  setting. (AR 28).

17      In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably

18  be accepted as consistent with objective medical evidence and other evidence, the ALJ noted he

19  followed the two-step process as set forth in the 20 C.F.R. 404.1529 and Social Security Ruling

20  ("SSR") 16-3p and considered the medical opinion(s) and prior administrative medical finding(s)

21  in accordance with 20 C.F.R. 404-1520c. First, the ALJ determined whether there is an underlying

22  medically determinable physical or mental impairment, *i.e.*, an impairment or impairments that can

23  be shown by medically acceptable clinical or laboratory diagnostic techniques that could reasonably

24  be expected to produce Plaintiff's symptoms. Second, the ALJ evaluated the intensity, persistence,

25  and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's

26  work-related activities. For this purpose, whenever statements about the intensity, persistence, or

27  functionally limiting effects of symptoms are not substantiated by objective medical evidence, the

28  ALJ considered other evidence in the record to determine if Plaintiff's symptoms limit the ability

1    to do work-related activities. (AR 29).

2        The ALJ summarized Plaintiff's allegations from the time he stopped working on February

3    1, 2020, due to his mental and physical limitations. Upon consideration of the evidence, The ALJ

4    found that Plaintiff's medically determinable impairments could reasonably be expected to cause

5    the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting

6    effects of symptoms are not entirely consistent with the medical evidence and other record

7    evidence. (AR 29).

8        The ALJ noted that since February 1, 2020, Plaintiff's records reveal treatment for obesity,

9    depressive disorder, and PTSD (citing to Exhs. 1F, 2F, 5F, and 7F-10F). The ALJ noted that

10    Plaintiff is obese as his body mass index has been calculated between 32 and 36.1 (citing to Exhs.

11    1F, 2F, and 5F). (AR 29).

12        The ALJ detailed Plaintiff's treatment records. The ALJ found that the treatment records

13    reveal that Plaintiff established care in April 2020 after he moved to Bakersfield from San Diego.

14    The ALJ further detailed the record's findings, including: Plaintiff maintained his wife perpetrated

15    domestic violence against him; Plaintiff reported no close relationships because "every relationship

16    has been destroyed"; he endorsed anxious and very low mood with associated symptoms of

17    anhedonia, low energy/motivation, anger, irritability, disturbed sleep, and dissociation; a reported

18    history of trauma with associated symptoms of hypervigilance, crowd avoidance, increased startle

19    response, flashbacks, and occasional nightmares; he failed to remember anger episodes, including

20    times when he harmed someone; the symptoms were moderate, constant, and impaired ability to

21    get things done; with increased depressive symptoms, he had low energy/motivation, often felt

22    tired, anhedonia, difficulty getting out of bed, and concentration issues; reported episodes during

23    which he slept four hours or less, high energy that can last for weeks, rapid speech, thinking faster

24    than normal, euphoria, increased sex drive, increase in usual spending, and being more gregarious.

25    The ALJ noted the records further revealed that in October 2020, Plaintiff was not socializing as

26    much, had trouble remembering appointments, and not always doing laundry, changing clothing,

27    showering, or taking care of his cat. The ALJ noted the records revealed that Plaintiff often forgot

28    to take medications for a day or two and needed help from his girlfriend, and when he did not take

1    medication, he noticed he got more angry or sad.  The ALJ noted the records showed that after

2    Plaintiff submitted an Aid and Attendance application, he asserted during the assessment that he

3    needed reminders to take medication, bathe, and eat.  The ALJ noted the records revealed that

4    Plaintiff maintained he had daily suicidal ideation and was not allowed to cook because holding a

5    knife triggered suicidal thoughts, and that Plaintiff was easily angered and frustrated, had issues

6    with financial impulsivity, and needed interventions during the week.  (AR 30).

7        The ALJ detailed the Provider's findings.  (AR 30).  The providers noted that Plaintiff's

8    mood was depressed, irritable, anxious, "feeling overwhelmed,[] fatigued, [] stressed" with mood

9    congruent and labile affect and rapid speech.  Treatment included medication management and

10   individual psychotherapy.  The providers further noted that Plaintiff generally reported no side

11   effects to medications except some grogginess with hydroxyzine.  (AR. 30).

12       The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting

13   effects of his symptoms were inconsistent with the overall record.  As to Plaintiff's alleged

14   significant mental health symptoms, the ALJ found that the record reveals Plaintiff's condition is

15   not as debilitating as alleged and improved with treatment.  In support, the ALJ cites generally and

16   to specific pages in Exhs. 2F, 5F, and 10F.  The ALJ found the records show that in addition to

17   treatment providers noting that Plaintiff was responding well to medication (Ex. 2F/36), Plaintiff

18   recognized that medication was helping him as indicated from Plaintiff's reporting that he

19   experienced a significant difference when he forgot to take medicine for a day or two (Ex. 2F/34),

20   that medication management helped "make him calm," Lacmictal helped with symptoms, and

21   medications were working well overall (Ex. 2F/80; 5F/36, 47; 10F/107, 221), and that he felt "kind

22   of normal" and that everything seemed to be okay (Ex. 2F/39, 40).  The ALJ noted that Plaintiff

23   reported in January 2021 that he had improved concentration and was taking care of himself (Ex.

24   10F/113), and in February 2021 he reported a "pretty good" mood and was able to handle his

25   "normal amount" of anxiety (Ex. 5F/36).  The ALJ noted the records show that in addition to

26   medication, Plaintiff acknowledged that regular exercise was a positive modifying factor for his

27   mood and he had better mood quality with increased activity (Ex. 5F/73; 10F/133).  The ALJ noted

28   records show Plaintiff reported "good sleep" with hydroxyzine and gabapentin (Ex.5F/36, 37), that

1    Plaintiff denied insomnia, and Plaintiff reported sleeping 7 to 8 hours per night (Ex. 2F/30; 5F/111).

2    (AR 30).   The ALJ found no evidence of recent or a history of psychiatric hospitalizations,

3    emergency room visits, or need or emergency psychiatric care.  (AR 31).

4         Further, the ALJ found that the treating providers noted mental health status examinations

5    of Plaintiff showed generally unremarkable findings.  (AR 31-32).  The ALJ found that Plaintiff's

6    mental status/cognitive functioning did not appear impaired, and Plaintiff was alert and oriented.

7    The ALJ detailed the findings which showed Plaintiff was optimistic/calm and in no apparent

8    distress, was responsive with good eye contact, appeared well-groomed and well-nourished, had

9    normal speech and mood, and had a normal thought process.  The findings revealed Plaintiff had

10   no noted suicidal or homicidal ideation, auditory or visual hallucinations, psychosis, or delusions.

11   The findings further revealed that Plaintiff's memory was grossly intact, and his insight and

12   judgment were fair and good.  (AR 31-32).

13        As to Plaintiff's alleged issues with social functioning and activities of daily living, the ALJ

14   found that Plaintiff reported having a new girlfriend in September 2020, he spent time with others

15   in person, and regularly attended church (Ex. 4E/6; 2F/30).  (AR 31).  The ALJ found that Plaintiff

16   reported that he was not violent nor that his anger result in aggression or violence toward others

17   (Ex. 2F/33; 5F/26; 10F/49).   The ALJ found that the records reveal Plaintiff denied any

18   hallucination, delusion, nightmares, suicidal ideation, or homicidal ideation (Ex. 2F; 5F; 10F).  The

19   ALJ found that Plaintiff's October 2020 submission for a Physician's Certificate for Aid and

20   Attendance application—which alleged issues with hygiene, medication management, punctuality,

21   and organization—was denied (Ex. 2F/22; 5F/18, 44; 10F/41).  The ALJ found the evaluating

22   physician noted Plaintiff's records did not corroborate the need for in-person assistance and

23   indicated that Plaintiff was independent with activities of daily living, remained active with house

24   chores, and might only require intermittent low-level assistance secondary to musculoskeletal pain

25   flares.  The physician noted that Plaintiff did not require medical care from physical therapy or

26   physiatry.  The physician further noted that Plaintiff's mental health status was assessed as stable

27   overall and that his psychiatric symptoms did not impact his ability to manage his self-preservation

28   and safety (Ex. 5F/18, 19, 44; 10F/42).  (AR 31).

Further, the ALJ found that in spite of Plaintiff's alleged symptoms, Plaintiff reported normal appetite, good concentration, rare panic symptoms, and that his energy level was fine (Ex. 2F/12).  (AR. 30-31).  The ALJ found that Plaintiff reported walking over two miles to pick up prescriptions and that he was walking everywhere because he did not have a car (Ex. 2F/37, 50). The ALJ found that Plaintiff's activities of daily living were reportedly done independently (Ex. 5F/22-24; 10F/44-47) including that: Plaintiff reported living alone in April 2021; he was able to vacuum, mop, take out the trash, do laundry and the dishes; throughout the day, Plaintiff took a shower and had breakfast; Plaintiff had a driver's license and was able to drive himself to the clinic one day; he went out and took a walk about twice a week; watched television about three hours daily; did computer and telephone work; texted about eight hours daily; and read about two hours daily (Ex. 6F/3-4).  The ALJ found that Plaintiff reported being a minister to treatment providers, but he minimized his experience as a pastoral assistant during a hearing (Ex. 2F/13, 65, 73; 10F/59, 206, 213, 214).  (AR 31).

As to Plaintiff's alleged physician symptoms, the ALJ considered the April 20, 2021, opinion of consultative physician Dale Van Kirk.  (AR 32).  Dr. Van Kirk diagnosed Plaintiff with lumbosacral musculoligamentous sprain/strain likely associated with degenerative disc disease and chronic pain in the knees bilaterally with infrapatellar tenonitis and probably early patellofemoral chondromalacia.  Dr. Van Kirk opined that Plaintiff could perform a range of medium exertional work with postural and workplace environmental limitations.  He further opined that Plaintiff could frequently perform postural activities and should not be required to work in extremely cold and/or damp environments.  The ALJ found Dr. Van Kirk's opinion persuasive as it was based on an in-person examination, is supported by the clinical findings noted during the examination and the objective x-ray results, which revealed no significant findings, and the opinion is consistent with the overall record, which reveals a lack of significant complaints and/or treatment for back or knee pain.

The ALJ also considered the opinions of the state agency medical consultants.  The ALJ found unpersuasive the September 28, 2020, opinion of state agency medical consultant Dr. A. Cepeda—which concluded there was insufficient evidence due to limited medical evidence and the

lack of response to attempts to obtain information for treating sources outside of Veteran's Affairs (Ex. 1A)—because it was based on an incomplete record and is therefore inconsistent with the overall record, which contains subsequent medical evidence that is sufficient to provide an assessment of Plaintiff's physical condition.  The ALJ found persuasive the May 4, 2021, opinion of Dr. Manimtim which was rendered on reconsideration—that Plaintiff could perform a range of medium exertional work with postural and environmental limitations, could frequently climb, balance, stoop, kneel, crouch, and crawl, and should avoid concentrated exposure to cold/damp environments—because it is consistent with the Dr. Van Kirk's opinion and the overall record, which revealed generally unremarkable findings noted during physical examination as well as a lack of significant complaints and/or treatment for back or knee pain.  (AR 32).

The ALJ found unpersuasive the September 29, 2020, opinion of state agency medical consultant Dr. H. Amado, which was identical to the opinion of Dr. Cepeda (Ex. 1A), for the same reasons he found that opinion unpersuasive.  The ALJ found somewhat persuasive the February 9, 2021, opinion of Dr. E. Covey, Psy. D., which was rendered on consideration.  Dr. Covey noted the updated medical evidence included the Adult Function Report and treatment records though October 2020, which indicated severe mental medically determinable impairments but did not document ongoing marked limitations.  Dr. Covey opined that Plaintiff had mild limitation in understanding, remembering, or applying information and moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself.  Dr. Covey further opined that Plaintiff could carry out short and simple instructions, maintain concentration, persistence, and pace for such, was capable of superficial interaction with supervisors and coworkers within an environment that does not involve interaction with the public, and was capable of responding appropriately to changes in the work setting (Ex. 3A).  The ALJ noted Dr. Covey's opinion is more consistent with the overall record, but the assessed "paragraph B" limitations are not entirely consistent with his assessment.  The ALJ highlights as inconsistent that though Dr. Covey opined that Plaintiff had "mild" limitations in understanding, remembering, and applying information, he also opined that Plaintiff was limited to short and simple instructions.  Thus, the ALJ found the assessed "paragraph B" limitation here is not persuasive and found

1   persuasive the remaining of Dr. Covey's assessments because they are consistent with the overall

2   record, appear to consider Plaintiff's subjective allegations, and are supported by the clinical

3   findings noted during the mental status examinations.  (AR 33).

4          Lastly, the ALJ detailed and considered the August 28, 2020, Third Party Function Report

5   of Plaintiff's friend, Paul Micks, citing generally to Ex. 5E.  The ALJ detailed that in the report,

6   Micks acknowledged knowing Plaintiff for only two months, but reported spending time with him

7   every day playing video games.  She reported Plaintiff spent the day playing video games and

8   watching TV and was able to take care of his pet.  Plaintiff needed reminders to shower, brush/floss

9   his teeth, eat, and clean.  Plaintiff's sleep was disturbed by restlessness and because he was

10  "fidgety."  Plaintiff prepares simple meals like sandwiches and frozen dinners a few times a week.

11  Plaintiff cleans, drives a car, and goes out alone.  He shops for groceries in stores and by computer.

12  He was able to pay bills, manage his finances, and his ability to handle money had not changed.

13  Plaintiff spent time with others in person, on the phone, and via text several times a week.  He went

14  to Walmart and church on a regular basis.  Plaintiff had problems getting along with others due to

15  being overly sensitive, was easily irritated, and hard of communicating.  Plaintiff, however, got

16  along with authority figures "just alright."  He could pay attention "a long time," finished what he

17  started, and could follow written and spoken instructions well.  His ability to handle stress was "just

18  alright" and he handled changes in routine "just okay."  The ALJ found the opinion of Micks

19  somewhat consistent with the overall record, noting it as inconsistent with Plaintiff's subjective

20  allegations and demonstrates higher functioning than Plaintiff alleged.  The ALJ noted, however,

21  the report was completed after Micks had only known Plaintiff for two months.  (AR 33).

22         The ALJ assessed Plaintiff's residual functional capacity assessment, which is supported by

23  the overall record, which reveals Plaintiff's condition is not as debilitating as alleged and managed

24  with treatment.  The ALJ further determined that the residual functional capacity is supported by

25  Plaintiff's reports of improvement to treatment providers, the generally unremarkable clinical

26  findings, and the various medical opinions.  The ALJ determined the record lacks any medical

27  statements provided by any treatment providers that would support finding Plaintiff more limited

28  than what is established by the residual functional capacity.  (AR 33-34).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. The ALJ noted that Plaintiff has past relevant work as a pastoral assistant, a telephone sales representative, and a security guard. The ALJ found as required by SSR 82-62 that this work was substantial gainful activity, was performed long enough for Plaintiff to achieve average performance and was performed within the relevant period. However, the ALJ concluded that the demands of Plaintiff's past relevant work exceed his RFC and thus, Plaintiff is unable to perform past relevant work as actually or generally performed. (AR 34).

At step five, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs that exist in the national economy such as furniture cleaner, machine feeder, and scrap sorter. Accordingly, the ALJ concluded that a finding of "not disabled" is therefore appropriate under the five-step sequential evaluation required by C.F.R. § 404.1520(a). (AR 35).

After the Appeals Council denied review, Plaintiff initiated this action, filing the instant motion for summary judgment on August 1, 2022. (Doc. 15). Defendant filed an opposition on November 10, 2022. (Doc. 21).

### B.    Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II.    LEGAL STANDARD

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." (*Id*. at 1159) (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." (*Id*.) (quotation and citation omitted). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Healy v. Astrue*, 379 Fed. Appx. 643, 645 (9th Cir. 2010). In determining whether

1  the standard has been satisfied, a reviewing court must consider the entire record as a whole rather

2  than searching for supporting evidence in isolation.  (*Id.*).

3      The court will review only the reasons provided by the ALJ in the disability determination

4  and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205,

5  42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its judgment

6  for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is

7  susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038

8  (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error

9  that is harmless.  (*Id.*).  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

10 nondisability determination."  (*Id*). (quotation and citation omitted).  The party appealing the ALJ's

11 decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556

12 U.S. 396, 409-10 (2009).

13     A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits

14 within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any

15 substantial gainful activity by reason of any medically determinable physical or mental impairment

16 which can be expected to result in death or which has lasted or can be expected to last for a

17 continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the

18 claimant's impairment must be "of such severity that he is not only unable to do his previous

19 work[,] but cannot, considering his age, education, and work experience, engage in any other kind

20 of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

21     The Commissioner has established a five-step sequential analysis to determine whether a

22 claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

23 Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant

24 is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not

25 disabled.  20 C.F.R. § 416.920(b).

26     If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

27 two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R.

28 § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments

1   which significantly limits [his or her] physical or mental ability to do basic work activities," the

2   analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not

3   satisfy this severity threshold, however, the Commissioner must find that the claimant is not

4   disabled.  (*Id.*).

5          At step three, the Commissioner compares the claimant's impairment to impairments

6   recognized by the Commissioner to be so severe as to preclude a person from engaging in

7   substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more

8   severe than one of the enumerated impairments, the Commissioner must find the claimant disabled

9   and award benefits.  20 C.F.R. § 416.920(d).

10         If the severity of the claimant's impairment does not meet or exceed the severity of the

11   enumerated impairments, the Commissioner must pause to assess the claimant's "residual

12   functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's

13   ability to perform physical and mental work activities on a sustained basis despite his or her

14   limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

15         At step four, the Commissioner considers whether, in view of the claimant's RFC, the

16   claimant is capable of performing work that he or she has performed in the past (past relevant

17   work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work,

18   the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the

19   claimant is incapable of performing such work, the analysis proceeds to step five.

20         At step five, the Commissioner considers whether, in view of the claimant's RFC, the

21   claimant is capable of performing other work in the national economy.  20 C.F.R. §

22   416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational

23   factors such as the claimant's age, education, and past work experience.  (*Id.*).  If the claimant is

24   capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.

25   20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis

26   concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  (*Id.*).

27         The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

28   180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## III.    ISSUES AND ANALYSIS

Plaintiff asserts the ALJ's rejection of Plaintiff's testimony—that the limitations from which he suffers because of his severe impairments prevent him from performing work activity on a sustained basis—is without support of substantial evidence. (Doc. 15 at 6).  Thus, the issue before the Court is whether the ALJ improperly rejected Plaintiff's subjective symptom testimony.  As set forth below, the Court agrees with Plaintiff will remand for further proceedings.

### A.    The Parties' Contentions

Plaintiff argues the ALJ's rejection of his subjective symptom testimony regarding his limitations from performing work activity on a sustained basis is improper. (Doc. 15 at 6).  Plaintiff argues that the ALJ failed to include legally sufficient rationale to dispute his symptom testimony, offering only a "general discussion of the medical evidence" to show that Plaintiff's symptoms are "not consistent with the record" and the routine use of deficient, boilerplate language in improperly rejecting Plaintiff's claims. (Doc. 15 at 8-9).  Specifically, Plaintiff asserts that the ALJ failed to provide specific, clear, and convincing reasons for his credibility determinations.  (*Id.* at 9) ("The ALJ simply offers a conclusion that the medical evidence does not support the testimony[.]").  Plaintiff contends the ALJ's isolation of the record, and statement that "no physicians ever said [Plaintiff] must stop working or was more limited than found by the ALJ[,]" are improper under governing authority.  (*Id.* at 10).  Further, Plaintiff argues the ALJ's reliance on objective evidence to reject Plaintiff's testimony is an insufficient basis to reject the testimony.  (*Id.* at 11).

Defendant argues that the record shows Plaintiff was not as limited as he claimed.  (Doc. 21 at 2).  Defendant asserts that the ALJ's finding that Plaintiff's subjective symptom testimony is not fully reliable is supported by the ALJ's determination that Plaintiff's testimony is inconsistent with the objective medical evidence, his statements to treatment providers and the agency, his treatment history, his activity, and the medical opinion evidence.  (*Id.*).  Defendant recounts the ALJ's discussion of Plaintiff's subjective complaints and contrasts that testimony by detailing the

1   record evidence on which the ALJ relied to refute the reliability of Plaintiff's testimony. (*Id.* at 4-

2   5). Defendant argues Plaintiff's described activities undermine the reliability of his claims. (*Id.* at

3   4). Additionally, Defendant argues the ALJ's consideration of the objective evidence shows a

4   legitimate reason to discount Plaintiff's claims. (*Id.* at 5).

5          **B.      Governing Authority**

6          The ALJ is responsible for determining credibility,[5] resolving conflicts in medical

7   testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A

8   claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental

9   impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an

10  individual's statements of symptoms alone are not enough to establish the existence of a physical

11  or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007)

12  ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional

13  impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674 F.3d 1104,

14  1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

15  Determining whether a claimant's testimony regarding subjective pain or symptoms is credible

16  requires the ALJ to engage in a two-step analysis. *Molina*, 674 F.3d at 1112. The ALJ must first

17  determine if "the claimant has presented objective medical evidence of an underlying impairment

18  which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*

19  *v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This

20  does not require the claimant to show that his impairment could be expected to cause the severity

21  of the symptoms that are alleged, but only that it reasonably could have caused some degree of

22  symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

23         If the first step is met and there is no evidence of malingering, "the ALJ must provide

24  'specific, clear and convincing reasons for' rejecting the claimant's testimony." *Treichler v.*

25

26         ───────────────
           [5] SSR 16-3p applies to disability applications heard by the agency on or after March 28,
27  2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective
    symptom evaluation is not "an examination of an individual's character but an endeavor to
28  "determine how symptoms limit [the] ability to perform work-related activities." SSR 16-3p,
    2017 WL 5180304, at *3.

1    *Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281).  *See*

2    *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse

3    credibility finding must be based on "clear and convincing reasons").  The ALJ must make findings

4    that support this conclusion, and the findings must be sufficiently specific to allow a reviewing

5    court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not

6    arbitrarily discredit the claimant's testimony.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

7        The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the

8    claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."

9    *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22,

10   2023), F&R adopted, 2023 WL 5109769 (E.D. Cal. Aug. 8, 2023); *see Record v. Kijakazi*, No.

11   1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's

12   decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court

13   will still defer to the ALJ's decision.") (*quoting Wilson v. Berryhill*, 757 Fed. Appx. 595, 597 (9th

14   Cir. 2019)). "The standard isn't whether our court is convinced, but instead, whether the ALJ's

15   rationale is clear enough that it has the power to convince."  *Smartt v. Kijakazi*, 53 F.4th 489, 494

16   (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his work).

17       The ALJ may consider numerous factors in weighing a claimant's credibility, including "(1)

18   ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior

19   inconsistent statements concerning the symptoms, and other testimony by the claimant that appears

20   less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a

21   prescribed course of treatment; and (3) the claimant's daily activities."  *Smolen*, 80 F.3d at 1284.

22   In evaluating the credibility of symptom testimony, the ALJ must also consider the factors

23   identified in SSR 16-3P.  *Id.* (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)).  Accord

24   *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). These factors include:

25
        (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or
26      other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The
        type, dosage, effectiveness, and side effects of any medication an individual takes
27      or has taken to alleviate pain or other symptoms; (5) Treatment, other than
        medication, an individual receives or has received for relief of pain or other
28      symptoms; (6) Any measures other than treatment an individual uses or has used to

1
2
3

relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

4
5
6

SSR 16-3P, 2017 WL 5180304, at *7.  *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted).

7
8
9
10
11
12
13

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding requirement in Social Security cases.'"  *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th Cir. 2014) (*quoting Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)). "A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

14
15
16
17
18
19
20
21
22
23
24

"The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001).  *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability solely because the objective medical evidence does not substantiate your statements."). Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide additional reasons for discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – '[g]eneral findings are insufficient.'" *Id.* (*quoting Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

25
26
27
28

However, the medical evidence "is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court of Appeals has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records and concluded that contradictions with

1    the medical records, by themselves, are enough to meet the clear and convincing standard.

2    *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (*quoting Carmickle*, 533 F.3d at 1161).

3    **C.    Analysis**

4    Plaintiff testified that his severe medical impairments—obesity, depressive disorder, and

5    PTSD, from which the ALJ found Plaintiff suffered (AR 26 ¶ 3)—prevent him from performing

6    work activity on a sustained basis.  (Doc. 15 at 6); (AR 50-73; 303-310).  The ALJ summarized

7    Plaintiff's subjective symptom testimony:

> [Plaintiff] alleges he stopped working on February 1, 2020[,] because of his mental and physical limitations.  He has lingering back problems due to a previous car accident.  [Plaintiff] maintains that he can only walk for 15 minutes before experiencing lower back and knee pain.  The most he can lift is 10 pounds.  In March 2020, he took Amtrak from San Diego to Bakersfield and almost got lost because he almost got off in the wrong city.  After moving to Bakersfield, he has not been driven outside that city because there is no one to drive him.  He has a driver's license but sometimes his friend drives him to the grocery store.  [] [W]hen using the public bus system, he frequently misses his stop due to being distracted.  Being at a store is stressful because it is always crowded.  At the store, he has problems carrying heavy items because back problems.  [Plaintiff] testified that he has a computer, which he uses to frequently watch short YouTube videos.  He gets bored and loses interest after 20 minutes.  He also uses his cell phone to watch videos.  He does not really text anyone except for a few people because he does not like texting.  [Plaintiff] testified that he had a girlfriend.  He has not attended any community events but has attended church services, which last about one hour.  He leaves after the service and does not stay to socialize.  [] [Plaintiff] alleged he stays to himself because he has difficulties being around people.  He has been fired from 2 jobs because of incidents involving other employees, 1 involved his ex-wife against whom he obtained a restraining order.  He is suspicious of others and believes they are trying to hurt or trick him.

21    (AR 29).  The ALJ found that Plaintiff's medically determinable impairments could reasonably be

22    expected to cause Plaintiff's alleged symptoms.  (AR 29).  However, the ALJ rejected Plaintiff's

23    claims regarding the intensity, persistence, and limiting effects of his symptoms, finding that they

24    "are not entirely consistent with the medical evidence and other evidence in the record[.]"  (*Id.*);

25    *see Treichler*, 775 F.3d at 1103 (noting that ALJs "routinely include this [boilerplate] statement in

26    their written findings as an introduction ... before [identifying] what parts of the claimant's

27    testimony were not credible and why.").

28    Here, in discounting Plaintiff's testimony, the ALJ relied on the following: (1) Plaintiff's

1  purportedly inconsistent statements were at odds with his claims to debilitating impairments; (2)

2  Plaintiff's daily activities purportedly were inconsistent with his allegations of disabling functional

3  limitations; and (3) Plaintiff's claims were not corroborated by objective medical evidence.  (AR

4  29-34).

5          1.      *Plaintiff's Purported Inconsistent Statements are Not a Clear and*

6                  *Convincing Reason to Reject His Symptomology Testimony*

7                  (a)  Positive results from medications

8          As to Plaintiff's "alleged significant mental health symptoms," the ALJ recited record

9  findings, including records of Plaintiff's medication management and reporting to treatment

10  providers, to show his "condition is not as debilitating as alleged and improved with treatment."

11  (AR 30).

12         That Plaintiff obtained some relief from mental health symptoms through use of prescription

13  medications is not a proper ground upon which the ALJ may discount Plaintiff's credibility or reject

14  his symptomology testimony.  The Social Security Administration regulations state that in

15  evaluating the intensity and persistence of symptoms and determining the extent they limit a

16  claimant's capacity to work, a relevant factor to consider is "[t]he type, dosage, effectiveness, and

17  side effects of any medication you take or have taken to alleviate your pain or other symptoms."

18  20 C.F.R. § 404.1529(c)(3)(iv). Thus, the use of prescription medications to control but not

19  eliminate mental distress symptoms should be considered by the ALJ as a limiting factor in the

20  residual functional capacity.  Defendant cites no authority that the use of prescription psychotropic

21  medications to regulate but not eradicate a mental health disorder or its symptoms should be used

22  to discount a claimant's symptoms.  *Cf. Donald R. F. v. Saul*, No. 5:18-00158 ADS, 2019 WL

23  7938245, at *5 (C.D. Cal. Sept. 12, 2019) (rejecting similar "reported improvement with

24  medication" argument as basis for discounting symptomology testimony).[6]

25  _____

26         [6] For the same reasons, it was error for the ALJ to discount Plaintiff's symptomology
   testimony on the grounds that Plaintiff reported he could improve his mental health symptoms by
27  working out.  (AR 30).  While the Commissioner argues Plaintiff's reported ability to workout
   contradicts his testimony that he could lift no more than ten pounds (Doc. 21 at 5), the record
28  does not sufficiently evidence an inconsistency warranting an adverse credibility finding.  In any
   event, this argument is an improper post hoc rationalization because the ALJ did not rely on this

1    (b)  Ability to walk

2        The ALJ also discounted Plaintiff's credibility on the grounds that, though he testified "he

3    could only walk for 15 minutes," records in fact revealed that Plaintiff "reported walking over 2

4    miles to pick up prescriptions and that he was walking everywhere because he did not have a car,"

5    demonstrating an apparent inconsistency.  (AR 31).

6        Plaintiff did in fact testify that he could only walk for 15 minutes *before needing to take a*

7    *break*.  (AR 66-67).  At that point, Plaintiff testified he experiences pain in his lower back and legs.

8    *Id.*  And Plaintiff did in fact previously report to a social worker that on one occasion, he claimed

9    to have walked two miles to a medical clinic to acquire medications.  (AR 484-84).  These two

10   statements – needing to rest after 15 minutes of walking due to pain but walking regularly, including

11   on one occasion a total distance of two miles – are not (without further explanation by the ALJ)

12   internally inconsistent.

13       Because the ALJ rejected Plaintiff's symptomology testimony based on his unfounded

14   assessment that it was inconsistent with other statements, his reasoning is not supported by

15   substantial evidence.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1164-65 (9th Cir. 2014) (ALJ's

16   adverse credibility assessment was error because his conclusion that claimant testimony conflicted

17   with previous statements was not supported by the record).

18   (c)  Issues with social functioning

19       Similarly, the ALJ discounted Plaintiff's credibility by contrasting his reported "issues with

20   social functioning" with other evidence in the record.  (AR 31) ("the records reveal he reported

21   having a new girlfriend in September 2020 and that he spent time with others and [went] to church

22   regularly.").  Here, too, the ALJ fails to support his conclusions with substantial evidence.

23       First, although Plaintiff did claim to have a girlfriend at one point, he also stated she was

24   his only friend, that he did not understand why she put up with him, and that he expected her to

25   leave him.  (AR 68).  That does not contradict Plaintiff's testimony about experiencing social issues.

26   _____

27   asserted inconsistency in discounting Plaintiff's testimony concerning his capacity to lift/bear
     weight.  *See Bray*, 554 F.3d at 1225-26 (courts must "review the ALJ's decision based on the

28   reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to
     intuit what the adjudicator may have been thinking.").

1    Second, although he did claim to go to church regularly, as the ALJ noted, Plaintiff testified that he

2    "leaves after the service and does not stay to socialize." (AR 29). That also does not contradict

3    Plaintiff's testimony about experiencing social issues. Finally, to support his characterization that

4    Plaintiff "spent time with others," the ALJ cites a function report in which Plaintiff responded to

5    the question about his church attendance with the answer, "Each week, pretty active." (AR 331)

6    (citing AR 307). While Plaintiff's mere attendance at church does constitute spending time with

7    others, given his unrefuted testimony that he did not socialize with others, it hardly is a basis for

8    discounting Plaintiff's testimony that he experiences social issues.

9        Because the ALJ rejected Plaintiff's symptomology testimony based on his unfounded

10    assessment that it was inconsistent with other statements, his reasoning is not supported by

11    substantial evidence. *See Ghanim*, 763 F.3d at 1164-65.

12        2.    *Plaintiff's Activities of Daily Living (ADL) do Not Provide a Clear and*

13            *Convincing Reason to Reject His Symptomology Testimony*

14        An ALJ may reject a claimant's subjective symptom testimony if it is inconsistent with the

15    claimant's activities of daily living. *Tommasetti*, 533 F.3d at 1039. There are two grounds on

16    which an ALJ may use a claimant's daily activities to question a claimant's credibility as to her

17    subjective symptoms: (1) when daily activities demonstrate the claimant has transferable work

18    skills, and (2) when daily activities contradict the claimant's testimony as to the degree of functional

19    limitation. *Orn*, 495 F.3d at 639. However, "disability claimants should not be penalized for

20    attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722; *see*

21    *Smolen*, 80 F.3d at 1284 n.7 ("The Social Security Act does not require that claimants be utterly

22    incapacitated to be eligible for benefits, and many home activities may not be easily transferable to

23    a work environment where it might be impossible to rest periodically or take medication."). "The

24    mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping,

25    driving a car, or limited walking for exercise, does not in any way detract from [their] credibility[.]"

26    *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (quoting *Vertigan*, 260 F.3d at 1050).

27    Regarding mental health issues, "[c]ycles of improvement and debilitating symptoms are a common

28    occurrence," and an ALJ errs by "pick[ing] out a few isolated instances of improvement over a

1    period of months or years and [] treat[ing] them as a basis for concluding a claimant is capable of

2    working." *Garrison*, 759 F.3d at 1017.

3        Plaintiff argues that nothing in Plaintiff's testimony regarding his limitations nor anywhere

4    else in the record or the decision indicates that he is capable of maintaining substantial gainful work

5    activity. (Doc. 15 at 14).  In rejecting Plaintiff's testimony, the ALJ simply recited a list of activities

6    of daily living from the record which he believed indicates Plaintiff has a higher mental and

7    physical functioning than alleged.  (AR 31).  The ALJ noted that Plaintiff's activities of daily living

8    were reportedly done independently.  (*Id*.).  The ALJ noted that in April 2021, Plaintiff reported

9    living alone in an apartment, and that he was able to do chores, take a shower, have breakfast, and

10   go on a walk about twice a week.  (*Id.*).  The ALJ noted that Plaintiff watched television, did

11   computer and telephone work, and texted and read a few hours a day.  (*Id*.).  The ALJ also pointed

12   out that Plaintiff reported being a minister to treatment providers but minimized his experience as

13   a pastoral assistant.  (*Id*.).

14       The ALJ failed to adequately explain how Plaintiff's described activities of daily living

15   conflict with his claimed limitations or demonstrate an ability to function in the workplace.

16   Plaintiff's intermittent engagement in these activities does not undermine his claim that he is unable

17   to sustain work.  *See Orn*, 495 F.3d at 639 ("The [Act] does not require that claimants be utterly

18   incapacitated to be eligible for benefits.").  Nor does the ALJ demonstrate how Plaintiff's activities

19   of daily living demonstrate his ability to rejoin the workforce.  Passive activities like watching

20   television are not transferable skills, and the amount of time Plaintiff spent preparing breakfast,

21   doing laundry, and texting was not substantial.  *See, e.g., Wilson v. Comm'r of Soc. Sec. Admin*.,

22   303 Fed. Appx. 565, 566 (9th Cir. 2008) (finding a plaintiff's occasional driving does not render

23   him able to work); *Vertigan*, 260 F.3d at 1050 (9th Cir. 2001) (finding "only a scintilla of evidence

24   in the record to support the ALJ's finding that [plaintiff] lacked credibility about her pain and

25   physical limitations" where the ALJ relied on Plaintiff's ability to go "grocery shopping with

26   assistance, walk approximately an hour in the malls, get together with her friends, play cards, swim,

27   watch television, ... read.... [and participate in] physical therapy for six months and exercise[ ] at

28   home."); *Costa v. Berryhill*, 700 Fed. Appx. 651, 653 (9th Cir. 2017) ("The ability to accomplish

1    daily tasks irregularly does not necessarily equate with an ability to work."); *Trevizo*, 871 F.3d at

2    682 ("[T]here is almost no information in the record about [plaintiff]'s childcare activities; the mere

3    fact that she cares for small children does not constitute an adequately specific conflict with her

4    reported limitations.").  Thus, the Court cannot ascertain which of Plaintiff's symptom testimony

5    the ALJ rejected based on the ADL evidence, or why.  *See, e.g., Isis A. v. Saul*, No. 18cv01728-W-

6    MSB, 2019 WL 3554969, at *6 (S.D. Cal. Aug. 5, 2019) ("Because the ALJ did not identify any

7    actual inconsistency in his opinion or describe his reasoning, the Court cannot ascertain which of

8    Plaintiff's symptom and pain testimony the ALJ rejected based on the ADL evidence.") (citing *inter*

9    *alia Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  For these reasons, the ALJ did

10    not identify a specific, clear, and convincing reason for discrediting Plaintiff's symptom testimony

11    when he did not explain how those ADLs either contradicted Plaintiff's testimony or equaled

12    transferable work skills.

13                  *3.      Lack of Support from Objective Medical Evidence is Not Clear and*

14                        *Convincing Reason to Reject Plaintiff's Symptomology Testimony*

15         Finally, Plaintiff argues that Defendant's reliance on the objective evidence to reject

16    Plaintiff's symptom testimony, in-and-of-itself, is insufficient to reject the testimony.  (Doc. 15 at

17    11).  The Court agrees.

18         While finding that a claimant's complaints are inconsistent with (as compared to

19    unsupported by) objective medical evidence can satisfy the clear and convincing requirement for

20    rejecting symptomology testimony (*see Regennitter v. Comm'r of Soc. Sec. Admin*., 166 F.3d 1294,

21    1297 (9th Cir. 1998); *Isis A.*, 2019 WL 3554969, at *7), an ALJ cannot reject such testimony "solely

22    because the degree of pain alleged is not supported by objective medical evidence."  *Orteza v.*

23    *Shalala*, 50 F.3d 748, 749–50 (9th Cir. 1995); *Bunnell*, 947 F.2d at 345.

24         Since the other reasons the ALJ gave for discounting Plaintiff's credibility were not

25    supported by substantial evidence, even if the ALJ properly found that the objective medical

26    evidence is inconsistent with Plaintiff's symptomology testimony, this alone is not a proper basis

27    to support the ALJ's overall credibility determination.  Thus, the ALJ's reason for discrediting

28    Plaintiff's testimony here is legally insufficient to support his adverse determination, and thus

1    cannot be legally sufficient by itself to reject Plaintiff's testimony.  *See, e.g., Zinobia v. Berryhill*,

2    No __, 2019 WL 13032522, at *6 (C.D. Cal. Jan. 29, 2019) ("Standing alone, a reason based on

3    lack of objective medical evidence is insufficient to support the assignment of little weight to a

4    claimant's subjective symptom allegations.") (citing *inter alia Burch*, 400 F.3d at 681); *Stone v.*

5    *Berryhill*, No. 17-cv-1689-W-RNB, 2018 WL 2317549, at *1, *5 (S.D. Cal. May 17, 2018), R&R

6    adopted, 2018 WL 3327873 (S.D. Cal. July 6, 2018) (same).

7                              *    *    *    *    *

8         In sum, the ALJ failed to consider or properly reject Plaintiff's symptom testimony

9    regarding his limitations from performing sustained work activity under the applicable standard.

10   While an ALJ's error may be harmless where he provides valid reasons for disbelieving a claimant's

11   testimony in addition to invalid reasons (*Molina*, 674 F.3d at 1115 (citing cases)), here, the ALJ

12   provided no valid reasons for rejecting Plaintiff's symptomology testimony.  Accordingly, the error

13   is not harmless.

14        **B.      Request for Remand**

15        Plaintiff seeks to remand for payment of benefits or in the alternative, for correction of the

16   legal errors.  (Doc. 15 at 18-19).  Defendant argues that where the Court finds reversible error, the

17   ordinary remand rule applies.  (Doc. 21 at 7).  "The decision whether to remand for further

18   proceedings or simply to award benefits is within the discretion of court."  *Trevizo*, 871 F.3d at 682

19   (*quoting Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).  "Remand for further

20   administrative proceedings is appropriate if enhancement of the record would be useful."  *Benecke*

21   *v. Barnhart*, 379 F.3d 587, 593 (emphasis omitted) (9th Cir. 2004).  On the other hand, if the record

22   has been fully developed such that further administrative proceedings would serve no purpose, "the

23   district court should remand for an immediate award of benefits."  (*Id.*).  However, a remand for an

24   immediate award of benefits is appropriate only in rare circumstances.  *Brown-Hunter*, 806 F.3d.

25   at 495.

26        In this case, the ALJ erred by (1) failing to identify the precise statements made by Plaintiff

27   that were not credible and (2) failing to provide adequate justification for finding Plaintiff's

28   statements not fully credible.  Given these errors, the Court concludes that remand for further

proceedings is warranted because additional administrative proceedings may remedy the deficiencies in the ALJ's decision noted herein.

**IV.   CONCLUSION AND ORDER**

For the reasons set for above, the Court finds the ALJ erred in evaluating opinions in the record and failed to apply the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment (Doc. 14) is **GRANTED**;

2.    The decision of the ALJ (Doc. 14) is **REVERSED**;

3.    This matter is **REMANDED** pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this decision; and

4.    The Clerk of the Court is **DIRECTED** to enter judgment in favor of Plaintiff Abe Parker, III and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **January 23, 2025**                                          _____

UNITED STATES MAGISTRATE JUDGE